FILED
WILLIAMSPORT, PA

FEB 0 4 2002

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ANGSTADT and BARBARA ANGSTADT, h/w, Parents and Natural Guardians of MEGAN ANGSTADT, a Minor, | CIVIL NO.: 4:CV-02-0145 |
| | (JUDGE McCLURE) |
| | COMPLAINT FILED: 1/29/02 |
| Plaintiffs | JURY TRIAL DEMANDED |
| vs. | |
| MIDD-WEST SCHOOL DISTRICT, | |
| Defendants | |

**PLAINTIFFS' BRIEF IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I.   PROCEDURAL HISTORY

On January 29, 2002, Plaintiffs filed their Complaint and an Application for Temporary Restraining Order. This court has scheduled a hearing on that Application for February 4, 2002. This Brief is respectfully submitted in support of Plaintiffs' Application.

1

## II. FACTS

This action arises under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983 and the Pennsylvania Charter School Law, Pa. Stat. Ann. tit. 24, §§17-1701-A *et seq*. Plaintiffs claim that Defendant has violated their rights to due process, freedom of association, and have violated the Pennsylvania Charter School Law by refusing to allow Megan Angstadt to play interscholastic basketball.

Plaintiffs David and Barbara Angstadt are the parents of Minor Plaintiff Megan Angstadt, born January 31, 1987. Megan is of compulsory school age. Defendant Midd-West School District is a public school district created and operating pursuant to the laws of the Commonwealth of Pennsylvania, and is Megan Angstadt's "school district of residence" pursuant to the Pennsylvania Charter School Law.

From the third through the eighth grades, ending in 2001, Megan Angstadt, with the knowledge and authorization of Defendant, was a lawfully home-schooled student. As of the end of the school year 2000 – 2001, Megan Angstadt had successfully completed grades three through eight as a home-schooled student. During the 1999 – 2000 and 2000 – 2001 school years, while Megan Angstadt was a home-schooled student, Defendant authorized and permitted her to practice, play and compete in interscholastic seventh and eighth grade basketball for Defendant.

2

Early in the 2001 – 2002 school year, Megan Angstadt was lawfully enrolled as a ninth grade student with Western Pennsylvania Cyber Charter School ("WPCCS"). WPCCS is a duly chartered and certified charter school pursuant to the Pennsylvania Charter School Law, and lawfully operates as such in Pennsylvania.

Pursuant to the Pennsylvania Charter School Law:

> Notwithstanding any provision to the contrary, no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

Pa. Stat. Ann. tit. 24, §§17-1719-A(14). WPCCS does not have a basketball team for female students of Megan Angstadt's age and grade.

During the beginning of the 2001 – 2002 basketball season, Megan Angstadt practiced, played, and competed in three interscholastic basketball games for Defendant. In addition, Megan Angstadt is a Co-Captain of her team.

Thereafter, Defendant placed upon Megan Angstadt unreasonable, arbitrary and capricious requirements in order for her to continue playing interscholastic basketball for Defendant, and has refused to allow Megan Angstadt to practice or play in interscholastic basketball for Defendant by claiming that she has not met the unreasonable, arbitrary and capricious requirements.

3

The requirements which Defendant has placed upon Megan Angstadt include the following : (1) that WPCCS call or email Defendant's Principal on a daily basis of specific courses, the amount of log on time per day, and time per subject, per day, by number of minutes; (2) that WPCCS "call or email [Defendant's] Principal weekly on student GPA per course"; (3) that WPCCS "call or email [Defendant's] Principal week four or five and week nine with a citizenship grade"; (4) that Megan Angstadt attend WPCCS during the exact same hours students attend Defendant; (5) that Defendant cannot identify Megan Angstadt's grade level; (6) that Megan Angstadt attend a physical education course supervised by a certified teacher.

Despite the fact that Megan Angstadt has met all charter school, cyber charter school, Pennsylvania Department of Education, and PIAA requirements, she and WPCCS have also striven to meet all of the requirements placed upon her by Defendant. WPCCS has supplied Defendant with Megan Angstadt's general daily schedule, daily emails of Megan Angstadt's log-in and log-off times, and weekly emails of her grades and time spent per course. WPCCS is providing a citizenship grade. Megan Angstadt attends WPCCS during the exact same hours students attend Defendant. Because Megan Angstadt has been home-schooled within Defendant since third grade, and received appropriate certifications from Defendant of completing an appropriate home-school education each year,

4

Defendant certainly can identify Megan Angstadt's grade level. Megan Angstadt attends the exact same type of physical education course which was approved while she was home-schooled.

Nevertheless, Defendant continues to refuse to allow Megan Angstadt to practice, play and compete in interscholastic basketball for Defendant.

III.  ISSUE

WHETHER THIS COURT SHOULD ENTER AN INJUNCTION REQUIRING DEFENDANT TO PERMIT MEGAN ANGSTADT TO PLAY INTERSCHOLASTIC BASKETBALL FOR DEFENDANT?

Plaintiffs respond in the affirmative.

IV.  ARGUMENT

in Goss v. Lopez, 419 U.S. 565, 572-73, 95 S. Ct. 729 (1975), the supreme Court stated: "The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." See also Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701 (1972).

In Roth the Supreme Court stated:

Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a

> benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id., S. Ct. at 2709.

In this matter, there is a clear statutory provision requiring that

> no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity."

Pa. Stat. Ann. tit. 24, §§17-1719-A(14). Therefore, Plaintiffs contend that this statutory provision gives them a property interest in not being denied participation in Defendant's interscholastic basketball team as long as Megan Angstadt meets the requirements therefor. Unfortunately, the statute does not define those requirements, and there is no known case law defining the same.

At this point, it should also be noted that the Charter School Law specifically states that "[n]othing in this clause shall p[preclude the use of computer and satellite linkages for delivering instruction to students." Pa. Stat.

Ann. tit. 24, §17-1715. Furthermore, based upon an unreported Pennsylvania Commonwealth Court decision, cyber charter schools are, as of now, considered legitimate charter schools, and student enrolled therein are considered to meet compulsory school attendance. See Pennsylvania School Boards Association, Inc. v. Zogby, accompanying this Brief as Exhibit "A." The Pennsylvania Department of Education and the Pennsylvania Attorney General support this conclusion as evidenced by their Preliminary Objections filed in the Zogby case, and accompanying this Brief as Exhibit "B."

In determining what process is due in this case, the Third Circuit has looked at the issue of a suspension from extracurricular activities under New Jersey law in Palmer v. Merluzzi, 868 F.2d 90 (3d Cir. 1989). In Palmer the court recognized that the process due for a suspension from extracurricular activities was the same as the process due for a suspension from school.

Regarding irreparable harm, in Favia v. Indiana Univ. of Pa., 812 F. Supp. 578 (W.D. Pa. 1992) the court found that harm of this type at the undergraduate level is irreparable and sufficient to warrant a TRO:

> By cutting the women's gymnastics and field hockey teams, IUP has denied plaintiffs the benefits to women athletes who compete interscholastically: they develop skill, self-confidence, learn team cohesion and a sense of accomplishment, increase their physical and mental well-being, and develop a lifelong healthy attitude. The opportunity to compete in undergraduate interscholastic athletics vanishes quickly, but the benefits do not. We believe that the harm

7

emanating from lost opportunities for the plaintiffs are likely to be irreparable.

Id at 583.

Therefore, Plaintiffs assert that Megan Angstadt will suffer immediate and irreparable injury, loss or damage should Defendant be permitted to continue placing unreasonable, arbitrary and capricious requirements upon Megan Angstadt to play interscholastic basketball for Defendant, and to continue refusing to allow Megan Angstadt to play interscholastic basketball for Defendant.

                RIEDERS, TRAVIS, HUMPHREY, HARRIS,
                   WATERS & WAFFENSCHMIDT

_____
Jeffrey C. Dohrmann, Esquire
Attorney for Plaintiffs
I.D. No. 68870
PO Box 215
161 West Third Street
Williamsport, PA 17701
(570) 323-8711

## CERTIFICATE OF SERVICE

AND NOW comes Jeffrey C. Dohrmann, Esquire, Attorney for Plaintiff, and certifies that a copy of the foregoing was served personally upon Michael Levin, Esquire, this 4th day of February, 2002.

RIEDERS, TRAVIS, HUMPHREY, HARRIS,
WATERS & WAFFENSCHMIDT

Jeffrey C. Dohrmann, Esquire
Attorney for Plaintiffs
I.D. No. 68870
PO Box 215
161 West Third Street
Williamsport, PA 17701
(570) 323-8711