


CHASER Pre Extracted Civil Docket as of February 4, 2002 7:26 pm
EMERG

*PUBLISH*

# U.S. District Court

Middle District of Pennsylvania (Williamsport)
CIVIL DOCKET FOR CASE #: 4:02cv00145-

Angstadt, et al v. Midd-West School Dis      Filed: 01/29/02

Assigned to: Judge James F. McClure, Jr.

Demand: $0,000 42109                          Nature of Suit: 440

Lead Docket: None                             Jurisdiction: Federal Question

Dkt# in other court: None

Cause: 42:1983 Civil Rights Act

| * Parties * | * Attorneys * |
|---|---|
| **DAVID ANGSTADT**<br>plaintiff | Jeffrey C. Dohrmann<br>[COR LD NTC]<br>Rieders Travis Humphrey Harris<br>Waters & Waffenschmidt<br>161 West Third St.<br>Williamsport, PA 17701<br>570-323-8711 |
| **BARBARA ANGSTADT, Parents and** Natural Guardians of MEGAN ANGSTADT, a Minor<br>plaintiff | Jeffrey C. Dohrmann<br>(See above)<br>[COR LD NTC] |
| v. | |
| **MIDD-WEST SCHOOL DISTRICT**<br>defendant | Michael I. Levin<br>[COR LD NTC]<br>Michael I. Levin and Associates, P.C.<br>1402 Masons Mill Business Park<br>1800 Byberry Road<br>Huntingdon Valley, PA 19006<br>(215) 938-6378 |

## Docket Proceedings

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID ANGSTADT and BARBARA ANGSTADT, h/w, Parents and Natural Guardians of MEGAN ANGSTADT, a Minor,
  Plaintiffs

v.

MIDD-WEST SCHOOL DISTRICT,
  Defendant

No: 4:CV-02-0145
(Judge McClure)

FILED
WILLIAMSPORT, PA

FEB 5 2002

MARY E. D'ANDREA, CLERK
Per_____
    DEPUTY CLERK

**MEMORANDUM**

Februrary 5, 2002

**BACKGROUND**:

On January 29, 2002, plaintiffs David Angstadt and Barbara Angstadt, husband and wife, acting on behalf of their minor child Megan Angstadt commenced this civil rights action against defendant with the filing of a complaint pursuant to 42 U.S.C. § 1983. Succinctly stated, plaintiffs allege that defendant refuses to allow Megan, a ninth grade student with Western Pennsylvania Cyber Charter School, to practice, play and compete in interscholastic basketball for defendant in violation of her First and Fourteenth Amendment rights. Plaintiffs also bring a state claim pursuant to the court's supplemental jurisdiction, 28 U.S.C. § 1367, for a violation of the Pennsylvania Charter School Law, 24 Pa. Stat. Ann. § 17-1701-A et seq.

Along with their complaint, plaintiffs also filed an application for a temporary restraining order pursuant to Fed. R. Civ. P. 65, alleging that Megan will suffer immediate, irreparable harm if a temporary restraining order in the form of an injunction requiring defendant to permit her to practice, play and compete in interscholastic basketball for defendant is not granted. A telephone conference was held with counsel for the parties in the afternoon on Thursday, January 30, 2002

setting a court hearing on the merits of the plaintiffs' application for Monday, February 4, 2002. By order dated January 31, 2002, the court denied plaintiffs' application for a temporary restraining order and ordered further that the application would be considered a motion for preliminary injunction.

On February 4, 2001, the court heard arguments and received evidence submitted by both parties. The ruling on plaintiffs' motion is set forth below.

**DISCUSSION**

### I. STANDARD OF REVIEW

"The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court ...." Southco, Inc. v. Kanebridge Corp., 258 F.3d 148, 150 (3d Cir. 2001). In order to obtain a preliminary injunction, the moving party must show (1) a reasonable probability of success on the merits, (2) irreparable injury if the injunction is denied, (3) the harm to it outweighs the possible harm to other interested parties, and (4) the injunction would be in the public interest. See Crissman v. Dover Downs Entm't, Inc., 239 F.3d 357, 364 (3d Cir. 2001); BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000); Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989).

Establishing a risk of harm is not enough. Hohe, F.2d at 72 (3d Cir. 1989). The moving party has the burden of proving a "clear showing of immediate irreparable injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980)(citation omitted). The "requisite feared injury or harm must be irreparable not merely serious or substantial," and "must be of a peculiar nature, so that compensation in money cannot atone for it." Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977). Further, the irreparable harm must be actual and imminent, not merely speculative. See Raitport v. Provident National Bank, 451 F.Supp. 522, 530 (E.D.Pa. 1978). Such relief is not appropriate to "eliminate the

2

possibility of a remote future injury ...." Id. (quoting Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969)).

## II. STATEMENT OF FACTS

Megan is fifteen years old, having been born on January 31, 1987. Defendant is Megan's "school district of residence" pursuant to the Pennsylvania Charter School Law.

Megan was continuously home schooled between the third and eighth grades, inclusive. As of the end of the school year 2000-2001, Megan had successfully completed grades three through eight as a home-schooled student.[1] She was approved for home-schooling for the current school year 2001-2002.

Defendant's board of directors has had a home schooling policy that has consistently precluded home-schoolers from participating in school district activities. The policy was originally adopted on December 16, 1985 and revised on February 20, 1995. The relevant language of the policy provides that: "[s]tudents approved for home education programs shall not be eligible to participate in extra-curricular and athletic activities offered in the Midd-West School District" (Policy Guide 137 at 4).

When Megan was at the chronological age for seventh grade, her mother, knowing the policy prohibiting home-schoolers from participation in extra-curricular activities, appealed to the school board that the policy be changed. At the school board's public meeting on August 16, 1999, defendant's board of school directors debated whether to revise its home school policy or grant an exception to the policy. After debate, a motion to change the policy was defeated by a vote of 4

---

[1] "Home schooling" is authorized by the Public School Code as a legitimate means of fulfilling compulsory school attendance requirements, provided numerous conditions are satisfied. See 24 Pa. Stat. Ann. § 13-1327.

3

to 4. The board then voted to grant to Megan an exception to the policy and to allow her to play basketball for that year with the seventh and eighth grade girl's basketball team. A letter dated August 17, 1999 was sent to Megan's mother advising her of the exception to the policy. In relevant part, Megan's mother was advised as follows: "[b]y Board action on Monday, August 16, 1999, an exception to Policy Guide 137 was granted for the 1999-2000 school year that will allow your daughter, Megan, the opportunity to participate in the junior high girls basketball program at Middleburg High School." The letter also set forth a number of conditions with which Megan was required to comply, such as being transported to games, providing weekly documentation of academic progress and the like. Megan played on the seventh and eighth grade team during the 1999-2000 school year.

Megan also played basketball on the seventh and eighth grade team during the 2000-2001 school year, although that was in violation of the policy. Simply stated, the school district administrators responsible for implementing school district policy made an error and allowed Megan to play, even though it was in violation of policy and no exception was granted by the school board for the 2000-2001 school year. The current school year, however, was different.

In accordance with the home schooling statute, Megan applied for and was granted permission to be a home-schooler for the current school year. However, knowing that Megan would not be permitted to play basketball because of defendant's policy, Megan's mother appealed to the school board again. At a public school board meeting on September 17, 2001, Megan's mother expressed her concerns about the policy prohibiting her daughter from participation on the junior varsity basketball team and she proposed that the school board institute a

4

trial period for the current school year to allow home-schoolers to participate in extracurricular activities. The school board did not act on that request.

Although Megan began the current school year as a home-schooler, she subsequently enrolled in Western Pennsylvania Cyber Charter School (WPCCS) for the remainder of the school year. By letter dated October 1, 2001, to defendant's Assistant Superintendent, Megan's mother wrote:

> This is to inform you that as of September 28, 2001, Megan Angstadt is no longer a homeschooled student but is enrolled as a public school student in [WPCCS]. As such she is entitled to participate in extracurricular activities in Midd-West School District, her district of residence. She will be signing up for basketball for the 2001-2002 school year.

WPCCS is a creation of the Midland School District in Western Pennsylvania. It purports to operate pursuant to the Pennsylvania Charter School Law, 24 Pa. Stat. Ann. §§ 17-1701-A, et seq. Notably, however, the issue of whether WPCCS qualifies as a lawful charter school for purposes of the Pennsylvania Charter School Law is highly contested between the parties.

Defendant made a determination to allow Megan to participate in its junior varsity girls basketball program provided that she met the same conditions for participation as are required to be met by students enrolled in Midd-West. According to defendant, Megan fails to meet these conditions and, therefore, is precluded from playing.[2]

---

2  The conditions are contained in two letters to WPCCS – one dated October 23, 2001, and the other dated November 30, 2001. Although the conditions are set forth in twenty-nine (29) separate numbered paragraphs in the two letters, upon a careful reading of the letters, there are actually only five (5) general conditions that have been set forth by defendant. The 29 numbered paragraphs merely provide detail about each of the 5 conditions. The 5 conditions are as follows:
    (1) Megan must have achieved at least the 9th grade level academically;
    (2) Megan's curriculum must be similar to the curriculum, including the
(continued...)

Defendant's junior varsity girl's basketball team has a twenty-four game schedule. The schedule began on Saturday, December 1, 2001 and concludes Thursday, February 14, 2002. Megan played in the first three games, but was excluded thereafter. In short, Megan has missed seventeen games and, effective February 5, 2002, there are only four games remaining – February 7, 2002, February 9, 2002, and February 11, 2002, February 14, 2002.[3]

### III. ANALYSIS

The court turns now to whether plaintiffs have established that they are entitled to relief in the form of a preliminary injunction.

<u>1. Likelihood Of Success On The Merits</u>

Plaintiffs hinge their "likelihood of success" argument on the contention that Megan has a property interest in not being denied participation in defendant's interscholastic basketball team, which interest is created by the Pennsylvania Charter School Law in permitting charter school students to participate in extracurricular programs of their resident school districts. The provision relied on specifically by plaintiffs provides:

> Notwithstanding any provision to the contrary, no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

---

2(...continued)
      physical education course, for the students enrolled in Midd-West;
      (3) Verifiable attendance documentation must be provided;
      (4) On-going passing grades must be documented;
      (5) An average or above citizenship grade must be maintained by Megan.

3 The February 14, 2002 game is scheduled as a "make-up" for a previously game canceled as a result of inclement weather.

6

24 Pa. Stat. Ann. § 17-1719-A(14). Furthermore, plaintiffs point out another part of the Charter School Law stating: "[n]othing in this clause shall preclude the use of computer and satellite linkages for delivering instructions to students." 24 Pa. Stat. Ann. § 17-1715-A(9). Recognizing that the only way their claim can succeed, however, plaintiffs contend unequivocally that WPCCS is a "legitimate charter school[]," thereby placing it within the confines of the aforementioned provision of the Pennsylvania Charter School Law. Plaintiffs' Brief in Support of Application for Temporary Restraining Order (record doc no. 7) at 7.

Plaintiffs rely on the unreported Pennsylvania Commonwealth Court decision of <u>Pennsylvania Sch. Bds. Ass'n Inc. v. Zogby</u>, No. 213 M.D. 2001 at 2-4 (Pa. Commw. Ct. May 10, 2001).[4] Specifically, they rely on the statement by Senior Judge Morgan that: "[T]he two "cyber" schools presently in operation possess valid charters granted pursuant to [the Pennsylvania Charter School] Act.[5] This fact alone raises a presumption that the schools are lawful." <u>Id.</u> at 4. There, the court considered a motion for preliminary injunction to enjoin the withholding of a subsidy from a school district in order to pay existing cyber charter schools.

---

4  With respect to unreported decisions, Pennsylvania Rules Of Court, Internal Operating Procedures of the Commonwealth Court § 414, 210 Pa. Code § 67.55 (2002) provides, in part:
> Unreported opinions of the court shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel.

210 Pa. Code § 67.55.
  Plaintiffs have clearly ignored the directive of the Commonwealth Court in that they have both cited and relied upon an unreported decision of that court. It would be equally improper for this court to cite or rely upon that decision, and we have referenced it only because it was prominently put before the court by plaintiffs.

5  One of the cyber schools at issue was WPCCS.

7

Id. at 3. Judge Morgan declined to enjoin the state Department of Education from withholding subsidy, finding that: "[P]etitioners raise numerous issues of first impression relating to the validity of the 'cyber' charter schools. Despite the seriousness of the issues and the potential affect on school districts across the state, we cannot say that petitioners' interpretations of the various statutes [citing 24 Pa. Stat. Ann. §§ 17-1725-A, 17-1725A(a)(5)] are sufficiently 'clear' as to justify preliminary injunctive relief." Id.[6]

Defendant, on the other hand, submits that cyber schools are not authorized by the Pennsylvania Charter School Law. In support thereof, defendant cites two opinions, one by Judge Spiser of the Court of Common Pleas of Adams County and another by Judge Shaffer of the Court of Common Pleas of Butler County.

In Fairfield Area School Dist. v. The Nat'l Org. for Children, Inc., No. 01-5-1008, slip op. at 14 (Pa. Com. Pl December 11, 2001), Judge Spiser issued a preliminary injunction shutting down another cyber school, ruling that the Pennsylvania Charter School Law does not authorize cyber schools. His decision was based, in part, on his opinion that "the Charter School Law authorizes only brick and mortar institutions." Id. at 12. In support of his rationale, Judge Spiser noted:

> The General Assembly enacted the Charter School Law by adding a new article to the Public School Code on June 19, 1997. 24 [Pa. Stat. Ann.] § 17-1701-A et seq. At the time of enactment, technology was not available for cyber schools and the legislation was geared toward traditional brick and mortar facilities. Although the act provides, that nothing in the act precludes the use of

---

6 As additional grounds for the denial of a preliminary injunction, Judge Morgan noted that the case involved only the payment of money. Id. at 4 ("Petitioners' request for preliminary injunctive relief essentially involves the payment of money. Our courts have held that harm which can be compensated by money damages does not qualify as 'irreparable' for the purpose of preliminary injunctive relief.") (quoting Martians GP, Inc. v. Pepper, Hamilton & Schertz, 602 A.2d 1277 (1992)).

8

> computer and satellite linkages delivering instruction for students, we can assume that legislators watched the same television depictions of satellite linkages the rest of us viewed. One with which this court is familiar depicted students assembled in a classroom while receiving instruction from a distant, especially gifted teacher.

Id. at 10-11.

In <u>Butler Area Sch. Dist. v. Einstein Acad.</u>, No. 2001-50031, slip op. (Pa. Com. Pl. September 10, 2001), Judge Shaffer issued a preliminary injunction to prevent a cyber school – notably, the very same school at issue in the case before Judge Spiser – from opening in Butler County, stating:

> The Charter School Law was enacted before the explosion of Internet technology. It is doubtful that the framers of the legislation contemplated the "cyber" or Internet learning school to be within the scope of charter schools. The [c]ourt found persuasive the testimony of Joseph F. Bard, executive director of the Pennsylvania Association of Rural and Small Schools, who testified that cyber schools in general, and Einstein, in particular are merely home schooling by another name and are not entitled to public money as charter schools.

Id. at 8.

The General Assembly of Pennsylvania, in setting forth its findings for House Bill 1733 which, if enacted, would provide for the licensing, regulation and funding of cyber schools, also recognized that the Pennsylvania Charter School Law provides no authority for the creation of cyber schools:

> The General Assembly finds and declares as follows:
>
> (1) Since the enactment of the Charter School Law, applicants have sought charters to operate cyber schools as cyber charter schools.
>
> (2) Because the technology involved readily enables cyber schools to draw students from throughout this Commonwealth, cyber schools can operate without significant involvement with individual school districts, including the district that granted the charter.

9

(3) Because the technology permits students enrolled in a cyber school to access instructional programming on an irregular schedule and without being physically present in an educational facility, cyber schools do not fit the requirements of the Charter School Law to have a suitable physical facility and to provide a minimum number of days or hours of instruction.

(4) The Charter School Law does not provide an adequate framework for evaluating a cyber school application, holding an approved cyber school accountable and funding the operation of the cyber school.

(5) The General Assembly in enacting this act intends to provide a framework that is more appropriate to the technological possibilities of cyber education, to facilitate the utilization of cyber technology to improve student learning and to hold cyber schools accountable for meeting measurable academic standards and demonstrating gains in student achievement.

House Bill 1733, Session of 2001, P.N. No. 2176.

Given the foregoing, it is not sufficiently clear that WPCCS is lawfully considered a charter school within the meaning of the term as used in the Pennsylvania Charter School Law, 24 Pa. Stat. Ann. § 17-1701-A et seq. The aforementioned case law and legislative findings are not binding, and provide only a somewhat ambiguous and clouded framework for analysis of the instant matter. Indeed, the issue is one of first impression that cannot – and will not – be decided

10

today.[7] As such, it cannot be said that Megan has a clear and legitimate claim of entitlement to play interscholastic basketball for defendants.[8]

Even if plaintiffs could establish a clearly established right under the Pennsylvania Charter School Law allowing Megan, as a cyber school student, to play and practice interscholastic basketball for defendant, there is a serious question as to whether that creates a property interest worthy of protection under the United States Constitution and 42 U.S.C. § 1983. See Farver v. Bd. of Educ. of Carroll County, 40 F.Supp.2d 323 (D.Md. 1999). The court in Farver noted:

> [T]he Due Process Clause, under authority from both the Fourth Circuit and other courts, has clearly been held not to protect the interest of a child in participating in extracurricular activities (including sports)). Even recognizing that these days colleges are farm teams for the pros, and high schools are farm teams for colleges, and that, for champion athletes, certainly there could be economic consequences, the right to participate in extracurricular activities, as distinguished from the right to attend school, is not considered to be a protected interest under the Fourteenth Amendment.

Id. at 324.

Plaintiffs have failed to establish a high likelihood of success on the merits as to any of the four counts in the complaint.

---

7 As of February 1, 2002, litigation has been filed in seventeen different courts of common pleas seeking to enjoin cyber schools as being unlawful. the only cyber school that has been named in those suits is the Einstein Academy Charter School. Those seventeen common pleas cases are in different stages of the legal process. Eight courts have issued preliminary injunctions against the Einstein Academy. Of those eight, two (i.e. the Butler County and Adams County cases mentioned above) have been issued after full and complete evidentiary hearings. The other six are in the nature of temporary restraining orders, having been issued pending the evidentiary hearings. See Defendant's Memorandum of Law Opposing Plaintiffs' Motion for Preliminary Injunction (record doc. no. 6) at 17 n.10.

8 In reaching a decision today, it is unnecessary for the court to assess whether Megan met the requirements imposed upon her by defendants, compliance with which is necessary for her participation in defendant's basketball program, or whether those requirements are reasonable.

11

### 2. Irreparable Harm

As noted above, the plaintiffs must establish further that Megan will suffer actual and imminent "irreparable harm" if a preliminary injunction does not issue. Plaintiffs allege that defendant's refusal to allow Megan to practice, play and compete in the now remaining four games of the season constitutes such harm.[9] The court, however, is not so persuaded.

The court notes, as defendant has, the belatedness of plaintiffs' motion. Indeed, at the time plaintiffs filed their motion, Megan had already missed sixteen of the twenty-four junior varsity basketball games.

We find distinguishable the case of Favia v. Indiana Univ., 812 F.Supp. 578 (W.D.Pa. 1993) relied on by plaintiffs. There, a university eliminated altogether its women's gymnastics and field hockey teams. Id. at 580-81. Relying on the fact that one female plaintiff lost her scholarship and various other female plaintiffs were deprived of their opportunity to compete in interscholastic sports in which they had been participating since being very young, the court found plaintiffs had made an adequate showing of irreparable harm and issued a preliminary injunction to have the two teams reinstated and to prohibit the university from eliminating any more women's teams. Id. at 581-83.

Here, it is speculative to assume that, even in the event that a preliminary injunction would be granted to plaintiffs, Megan would in fact play in the four

---

[9] Nothing at the hearing, or in any filing by the parties, convinces the court that the irreparable harm complained of extends to anything other than Megan's preclusion from the now four remaining basketball games. Given that plaintiffs' burden includes a showing of "*immediate* irreparable harm," See Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (emphasis added), the court does not credit plaintiffs' claims made at the hearing that Megan will suffer such harm if a preliminary injunction is not granted and she is precluded from playing interscholastic basketball over the course of time necessary for disposition of the case on appeal.

remaining games. Aside from the three games she played this season, Megan has been precluded from not only playing basketball with the junior varsity girl's team, but also from practicing since early December. Indeed, Tara Paige, the junior varsity girls' basketball coach, testified at the hearing that Megan presently "sits in" on the games, behind the bench. Thus, it is reasonable to assume that Megan may not necessarily be selected to play for a significant period of time in any of the last four games should she be permitted to do so.

Plaintiffs have not established irreparable harm worthy of relief in the form of a preliminary injunction.

## IV. CONCLUSION

A preliminary injunction is only to be granted if and when each of the aforementioned four criteria has been established. Plaintiffs' failure to satisfy the first two requirements for a preliminary injunction clearly dictates that relief be denied. As such, it is unnecessary for the court to determine whether plaintiff has established the latter two requirements.

An appropriate order will issue.

James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ANGSTADT and BARBARA ANGSTADT, h/w, Parents and Natural Guardians of MEGAN ANGSTADT, a Minor,<br>　　　　　　Plaintiffs<br><br>　　　　　v.<br><br>MIDD-WEST SCHOOL DISTRICT,<br>　　　　　　Defendant | No: 4:CV-02-0145<br>(Judge McClure)<br><br>FILED<br>WILLIAMSPORT, PA<br><br>FEB 5 2002<br><br>MARY E. D'ANDREA, CLERK<br>Per_____<br>　　　　DEPUTY CLERK |

## ORDER

February 5, 2002

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

　　1.　Plaintiffs' motion for a preliminary injunction (record doc. no. 2) is denied.

　　2.　The clerk is directed to fax to counsel today a copy of the memorandum and order.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　James F. McClure, Jr.
　　　　　　　　　　　　　　　　　　　United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

February 5, 2002

Re:   4:02-cv-00145   Angstadt v. Midd-West School Dis

True and correct copies of the attached were mailed by the clerk to the following:

    Jeffrey C. Dohrmann, Esq.
    Rieders Travis Humphrey Harris Waters & Waffenschmidt
    161 West Third St.
    Williamsport, PA  17701

    Michael I. Levin, Esq.
    Michael I. Levin and Associates, P.C.
    1402 Masons Mill Business Park
    1800 Byberry Road
    Huntingdon Valley, PA  19006

*[handwritten: FAXed to counsel 2/5/02 (br) + published]*

cc:
| | | |
|---|---|---|
| Judge | ( ) | ( ) Pro Se Law Clerk |
| Magistrate Judge | ( ) | ( ) INS |
| U.S. Marshal | ( ) | ( ) Jury Clerk |
| Probation | ( ) | |
| U.S. Attorney | ( ) | |
| Atty. for Deft. | ( ) | |
| Defendant | ( ) | |
| Warden | ( ) | |
| Bureau of Prisons | ( ) | |
| Ct Reporter | ( ) | |
| Ctroom Deputy | ( ) | |
| Orig-Security | ( ) | |
| Federal Public Defender | ( ) | |
| Summons Issued | ( ) | with N/C attached to complt. and served by: U.S. Marshal ( )   Pltf's Attorney ( ) |
| Standard Order 93-5 | ( ) | |
| Order to Show Cause | ( ) | with Petition attached & mailed certified mail to: US Atty Gen ( )   PA Atty Gen ( )    DA of County ( )   Respondents ( ) |
| Bankruptcy Court | (✓) | |
| Other _press_ | (✓) | |

                                                       MARY E. D'ANDREA, Clerk

DATE: __2/5/02__                             BY: _____
                                                  Deputy Clerk